IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| KRYSTAL L. FORSGREN,<br><br>Plaintiff,<br><br>vs.<br><br>HYDRAULICS INTERNATIONAL, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, FOR A NEW TRIAL<br><br>Case No. 1:06-CV-158 TS |

## I. INTRODUCTION

The jury returned a verdict in favor of Defendant on Plaintiff's claims of strict product liability and negligence, finding that Defendant was not at fault as alleged by Plaintiff. Plaintiff renews her motion, made at the close of Defendant's case, for judgment as a matter of law and also moves for a new trial under Fed. R. Civ. P. 59(e). In her Motions, Plaintiff challenges only the jury's finding. Plaintiff argues that (1) there was a lack of evidence supporting the jury's verdict of no fault and (2) the jury improperly disregarded uncontroverted and stipulated evidence.

1

Defendant argues that it presented ample evidence that Defendant was not at fault and also argues Plaintiff's evidence was not uncontroverted.

The Court finds that there was a legally sufficient evidentiary basis for the jury's verdict and that this is not a case where the verdict could only have been the result of the jury disregarding uncontroverted evidence.

## II.  STANDARDS

At the close of Defendant's case, Plaintiff moved for judgment as a matter of law. Plaintiff argued that she had presented a prima facie case of strict product liability and negligence, but that Defendant "had failed to present any evidence to contradict or otherwise rebut Plaintiff's evidence."[1] That motion was denied and is now renewed. "Federal Rule of Civil Procedure 50(a)(1) allows the [trial] court to grant a motion for judgment as a matter of law 'if during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"[2] A judgment as a matter of law is appropriate "[i]f there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law."[3] Thus, judgment as a matter of law "is proper only when the evidence and all the inferences to be drawn therefrom, viewed in the light most favorable to the nonmoving party, is 'so patently in favor of the moving party that a jury verdict in favor of the opposing

---

[1] Pl.'s Mem. at 2.

[2] *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1399 (10th Cir. 1997) (quoting Fed.R.Civ.P. 50(a)(1)).

[3] *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999).

2

party would be improper and would have to be set aside by the trial judge.'"[4] As the Court explained in its ruling on Plaintiff's initial Motion for Judgment as a Matter of Law, when considering such a Motion, the Court does "not make credibility determinations or weigh the evidence."[5] "Although the substantive law of Utah applies in a diversity products liability case, federal law controls as to whether there was sufficient evidence to warrant submitting this case to a jury."[6]

Plaintiff also moves for a new trial under Rule 59(e). "If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."[7] As with a Rule 50 motion for judgment as a matter of law, the court "consider[s] the record evidence in the light most favorable to the prevailing party."[8]

---

[4] *Taylor*, 130 F.3d at 1399 (quoting *Peterson v. Hager*, 724 F.2d 851, 853-54 (10th Cir. 1984)); *see also Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996) (holding that granting motion is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position"); *Rocky Mountain Christian Church v. Board of Cnty Comm'rs*, 613 F.3d 1229, 1235 (10th Cir. 2010) (holding that judgment appropriate when "viewed in the light most favorable to the non-moving party, the evidence and all reasonable inferences to be drawn from it point but one way, in favor of the moving party") (quotation omitted).

[5] *Reeves v. Sanderson Plumbing Prods, Inc.,* 530 U.S. 133, 150 (2000).

[6] *Taylor*, 130 F.3d at 1399.

[7] *M.D. Mark, Inc. v. Kerr-McGree Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (internal quotation marks omitted)).

[8] *Anaeme*, 164 F.3d at 1284.

## III. DISCUSSION AND CONCLUSIONS

The Court will first address the strict liability claim. To prove her claim for strict product liability, Plaintiff had to show that the product was defective, that the defective condition existed at the time Defendant sold the product, and that the defect caused Plaintiff's injuries.[9] Although Plaintiff presented evidence on all of these elements, the Court finds her evidence was controverted by evidence from which the jury could find that the product was not defective and, therefore, that Plaintiff had not proven all of the elements of strict product liability.

Plaintiff's arguments for judgment as a matter of law and a new trial highlight the evidence of her own expert, Dr. Hoeppner. His testimony supported Plaintiff's theory that the explosion was caused because the excessive hardness of the metal made it too susceptible to the corrosion that eventually resulted in the explosion. However, contrary to Plaintiff's argument, Defendant presented sufficient evidence to defeat this theory. The testimony of defendant's fact witness Mr. Seifollahi, its expert Dr. Nelson, as well as the cross examination of Dr. Hoeppner, established the following: the steel was aircraft quality and designed to be heat treated and hardened; steel hardness is only one of thirty factors that may contribute to corrosion; hardness alone did not cause the product to fail; the failure was the result of a condition that allowed liquid to enter the receiver, which caused corrosion and crack formation; the corrosive agent could have entered through the vent hole; if all other factors were the same but there was a lower hardness of the steel, the

---

[9]Jury Instruction No. 20. Plaintiff does not challenge any of the instructions or the verdict form.

failure would still have occurred eventually; and that routine maintenance and inspection, including visual inspection, would have prevented the catastrophic failure. Thus, there was evidence to rebut Plaintiff's evidence in support of her theory of the case.

Plaintiff also contends that expert evidence was required to rebut Dr. Hoeppner's opinion that the re-heating of the steel resulted in the product not being fit for the environments where it was going to be used.[10] However, Plaintiff does not cite any case law in support of her position that—outside of a case involving professional malpractice—expert testimony is required to rebut expert opinion that the standard of care was breached. Defendant does not dispute the standard of care as stated by Plaintiff's expert. Rather, it disputes Plaintiff's argument that it failed to produce evidence to rebut Plaintiff's expert opinion that it breached that standard of care or that a breach was the cause of the injury.

Defendant is correct that such expert opinion regarding breach of the standard of care is required in some professional malpractice cases,[11] but is also correct that this is not a professional malpractice case. Where a plaintiff may prove product defect in a products liability case under Utah law by circumstantial evidence giving rise to certain inferences,[12] such evidence may also be sufficient when submitted by the Defendant to show no defect.

---

[10]Trans. at 30-32.

[11]*See e.g. Hoopiiaina v. Intermountain Health Care*, 740 P.2d 270, 271 (Utah. Ct. App.1987) (holding that "[i]n medical malpractice actions the plaintiff must provide expert testimony to establish: 1) the standard of care; 2) defendant's failure to comply with that standard; and 3) that defendant caused plaintiff's injuries").

[12]*See Taylor*, 130 F.3d at 1388-89.

5

In the present case, the Court finds Defendant's evidence sufficient to rebut Plaintiff's expert evidence that the hardness of the steel made the product unreasonably dangerous. For example, the facts that formed the basis of Dr. Hoeppner's expert opinion regarding breach of the standard of care were rebutted by such things as Dr. Nelson's expert testimony, partially summarized above, that hardness is only one of thirty factors that may contribute to corrosion and that hardness alone did not cause the receiver to fail.

Further, there was testimony from fact witness Seifollahi that Defendant's engineer's calculations had been checked and verified as correct, that Defendant was not required to, but did, design the product with a four-to-one safety factor; that Defendant was not required to, but did, perform destruction testing to ensure that the product exceeded the psi certification that was stamped on the product; and that the electrolysis nickel plating and hydrogen embrittlement relief had been verified and that it was industry standard to rely on such certification. There was also testimony from Mr. Seifollahi that, if the product had been correctly positioned (vertically aligned) by Plaintiff's employer Autoliv, corrosion would not have started with a substance introduced through the vent hole. He also testified that Defendant manufactured the product as a component that met and exceeded the psi standard specified by the purchaser—who was Raumland, a company that designed the system and sold it to Plaintiff's employer Autoliv.[13] This testimony, together with all of the other testimony and the natural inferences therefrom, was sufficient evidence from which

---

[13]Subsequent to the jury verdict and the completion of the briefing on Plaintiff's Renewed Motion for Judgment as a matter of Law, the Utah Supreme Court adopted the components parts doctrine. *Gudmundson v. Del Ozone*, 232 P.3 1059, 1073-74 (Utah 2010).

the Jury could reasonably find that there was not a defect or defective condition that made the product unreasonably dangerous.

Plaintiff's next argument is that the Jury could not disregard Plaintiff's evidence because it was uncontradicted. Defendant's theory of the case was that the product was correctly designed and manufactured, but that Plaintiff's employer, Autoliv, was at fault because of its failure to properly install and inspect the product.[14] But Plaintiff argues that all of the evidence presented by the Defendant in support of these theories should not have been considered by the Jury because it only related to Defendant's affirmative defense "which would only have required the jury to then apportion fault between Defendant and Autoliv."[15] Again, Plaintiff cites no authority for this position.

The Court does not agree that evidence of the fault of another as causing an injury can only be considered by the jury if it first finds that the defendant was at fault and then proceeds to allocated fault. It is only where a jury finds a defendant *and* another party to be liable that the jury would be required to reach the issue of allocation of fault.[16] As noted in *Ernest Hahn v. Armco Steel,*[17] in the situation where the plaintiff fails to prove unreasonable danger of the product, the defendant is not liable in the first instance and misuse by the user is not a true affirmative defense.[18] Thus, the Court finds that

---

[14] *See* Docket No. 55, at 2-3 (Def.'s Trial Brief explaining its theory of the case).

[15] Pl.'s Mem. at 14.

[16] *See* Jury Instruction No. 28.

[17] 601 P.2d 152 (Utah 1979).

[18] *Id.* at 158 n.5.

7

Defendant's evidence that (1) its product was not defective and (2) that it was Autoliv's alleged fault which caused the injury could be considered by the Jury in determining Defendant's fault in the first instance. Therefore, such evidence can be considered in determining whether there is sufficient evidence to support the jury's verdict and whether the verdict is "clearly, decidedly, or overwhelmingly against the weight of the evidence."[19] For the same reason, the Court rejects Plaintiff's argument that it is entitled to judgment because its evidence is uncontroverted "by proof or circumstances, directly or inferentially."[20] This is simply not a case where Plaintiff's evidence was uncontradicted.

The Court next addresses Plaintiff's claim of negligence, which requires Plaintiff to prove duty, breach, causation, and damages. Plaintiff argues that Defendant failed to present evidence to impeach or contradict her expert's testimony that Defendant failed to use reasonable care to design and produce the product.

Defendant does not dispute Plaintiff's expert's testimony on the standard of care. Instead, it argues that it did present evidence to the jury to contradict Dr. Hoeppner's testimony of the specific manner in which he opined that Defendant failed to meet those standards for manufacturing.

The Court agrees that Defendant did present evidence to contradict Dr. Hoeppner's testimony that Defendant breached its duty to use reasonable care in manufacturing its product. As discussed above, this is not a professional malpractice case where expert

---

[19] *M.D. Mark,* 565 F.3d at 762.

[20] *Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 212 (1931).

evidence may be required to show breach of a standard of care. Because Defendant's design engineer is no longer available, Defendant's evidence that it met the standard of care for manufacturing its product was presented through fact witnesses Pachecco, Seifollahi, Seehusen, and Turner, expert Dr. Nelson, and through cross examination of Dr. Hoeppner. In addition to the evidence discussed above, there was also the following evidence that: Defendant's role was not to design the entire machine system, but only a component part; that Raumland determined the specifications; Defendant provided a product that complied with and exceeded its customer Raumland's specifications; as was ordinary for these types of transactions, there was no direct communication between Defendant and Raumland's customer Autoliv; Raumland had communicated with Autoliv regarding the heat treating; Raumland had provided Autoliv with heat treated products before, and that Autoliv understood the process; Defendant appropriately tested and oxygen cleaned the product; and, while the product was shipped directly from Defendant to Autoliv, it was properly handled such that it was not exposed to water or corrosion during shipping.

The Court finds that all of the above discussed evidence, together with the entire record in this case, establishes that there was a legally sufficient evidentiary basis for the jury to find that Plaintiff had not shown that Defendant was at fault and that the weight of the evidence is not so clearly, decidedly, or overwhelmingly against the weight of the evidence that Plaintiff is entitled to a judgment as a matter of law or that a new trial should be granted. It is therefore

ORDERED that Plaintiff's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial (Docket Nos. 89 and 91) are DENIED.

DATED   March 31, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge